UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MICHAEL SHREFFLER, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CITY OF KANKAKEE and PRICE DUMAS, )<br>Individually and in his Official Capacity, )<br>)<br>Defendants. ) | Case No. 19-CV-2170 |

## ORDER

Plaintiff, Michael Shreffler, brought suit against Defendants City of Kankakee and former acting Kankakee Police Chief Price Dumas, in his individual and official capacities, alleging violations of Plaintiff's rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the First Amendment and Due Process Clause of the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983, the Free Speech Clause of the Illinois Constitution, and retaliatory discharge under Illinois state law.  On September 28, 2021, this court entered and Order (#35) granting Defendants' Motion for Summary Judgment (#22) in full.  On October 25, 2021, Plaintiff filed an extensive Motion to Reconsider (#42), requesting this court reconsider its ruling granting Defendants summary judgment.  Defendants filed their Memorandum in Opposition (#43) to Plaintiff's motion on November 8, 2021.

For the following reasons, Plaintiff's Motion to Reconsider (#42) is DENIED.

ANALYSIS

*Motions to Reconsider*

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). "A motion for reconsideration would be appropriate where, for example, the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). "A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the court." *Quaker Alloy*, 123 F.R.D. at 288. Such problems rarely arise and the motion to reconsider should be equally rare. *Quaker Alloy*, 123 F.R.D. at 288; *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "This is because the court's orders are 'not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *Pruitt v. Personal Staffing Group, LLC*, 2021 WL 197399, at *1 (N.D. Ill. Jan. 20, 2021), quoting *Geraty v. Village of Antioch*, 2015 WL 127917, at *3 (N.D. Ill. Jan. 8, 2015).

"A motion to reconsider 'is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" *Pruitt*, 2021 WL 197399, at *1, quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996).

Plaintiff, as the party seeking reconsideration "bears a heavy burden," and the decision whether to grant a motion to reconsider is a matter squarely within the district court's discretion. *Pruitt*, 2021 WL 197399, at *1, citing *Patrick v. City of Chicago*, 103 F.Supp.3d 907, 912 (N.D. Ill. 2015).

*Plaintiff's Facts*

Plaintiff argues that the court failed to consider all of the Additional Facts presented in Plaintiff's Response (#27). As stated in the court's Order (#35) at page 2, the court considered Plaintiff's Additional Facts. Plaintiff's contention in the motion is that the court did not find that his Additional Facts defeated Defendant's summary judgment motion, which is improper for a motion to reconsider.

*Plaintiff's Official Capacity Claims Against Dumas and State Law Claims*

In its Order (#35) at pages 30-32, the court found that Plaintiff's claims against Defendant Dumas in his official capacity were redundant of his claims against Defendant City. The court found that Plaintiff failed to respond to this argument. Plaintiff, in his reconsideration motion, argues that he "was responding to Defendants' argument in the memorandum for summary judgment." Plaintiff, at pages 11-13 of the reconsideration motion then goes on to argue why Dumas should be liable on the due process claim. This is unresponsive to the argument about redundancy.

The court found, at page 30 of its Order (#35), that "an official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Department*, 636 F.3d 293, 300 (7th Cir. 2011). The court further wrote that "Plaintiff's official capacity claims against Dumas can be treated as claims against the City of Kankakee, whom Plaintiff has also named as a defendant on the

3

same counts, and thus the suit against Dumas in his official capacity is redundant.  See *Sow*, 636 F.3d at 300; *Lugg v. Sutton*, 368 F.Supp.3d 1257, 1264 (C.D. Ill. 2019)."  Order (#35), at p. 30.  Plaintiff never responded to that argument in his Response, nor did he address it in his Motion to Reconsider.  Plaintiff's motion is denied on this ground.

Plaintiff also argues that he did not fail to respond to Defendants' arguments on his Illinois state law claims of retaliatory discharge (Count IV) and Illinois Constitution Free Speech (Count V).  However, he does not identify on what page in his Response he contests Defendants' summary judgment arguments on those state law claims.  That is because Plaintiff did not, at any point in his Response, directly address Defendants' motion for summary judgment on the state law claims.  Thus, for the reasons stated in the court's Order (#35) at pages 31 and 32, Plaintiff waived any argument against those claims.  Plaintiff's motion is denied on this ground as well.

*Title VII Racial Discrimination*

First, Plaintiff rehashes arguments concerning discrimination that were already considered and rejected by this court in its Order (#35) at pages 32-41, which is not appropriate in a motion to reconsider.  See *Pruitt*, 2021 WL 197399, at *1.  Plaintiff also argues that the evidence he presented created a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by a decisionmaker.  However, the Seventh Circuit since *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), has rejected the "convincing mosaic" formulation as a legal test.  *Green v. Wilkie*, 2021 WL 2515671, at *4, n.2 (N.D. Ill. June 18, 2021).

Plaintiff also argues, for the first time, that the court should have analyzed his discrimination claim under a "mixed motive" analysis. However, nowhere in Plaintiff's Response (#27 at pages 43-48) did Plaintiff make a "mixed motive" argument in support of his racial discrimination claim. A motion to reconsider is not appropriate for raising a new argument that could have been raised at summary judgment. See *Pruitt*, 2021 WL 197399, at *1.

Further, for the first time, Plaintiff has specifically identified a similarly situated coworker who was treated differently: Austin. However, in Plaintiff's Response at page 45, and as discussed in the court's Order at pages 36-37, Plaintiff never specifically identified a similarly situated comparator. Again, a motion to reconsider is not the time to raise an argument that could have been presented in the original briefing. *Stueve Construction, LLC v. Weber Plumbing and Heating, Inc.*, 2021 WL 3032665, at *1 (C.D. Ill. July 19, 2021). It was not the job of the court at summary judgment to make Plaintiff's arguments for him. See *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) ("This argument is raised in a short conclusory paragraph which contains no substantive argument, legal citations, or references in the record. This court has no duty to research and construct legal arguments available to a party, especially when he is represented by counsel.") (internal quotations omitted). The same reasoning applies to Plaintiff's remaining arguments concerning Defendants' legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Plaintiff also now argues that Defendants' failure to follow their own policies in terminating Plaintiff is evidence of discrimination. However, this argument was not raised in Plaintiff's Response, and, again, reconsideration is inappropriate where a party seeks to raise arguments that could have been raised in the original briefing. *Stueve Construction*, 2021 WL 3032665, at *1. Plaintiff's motion is denied on this ground.

*Title VII Retaliation*

Plaintiff next argues that the court erred in its Title VII retaliation analysis by finding that Plaintiff did not engage in protected activity under Title VII. Plaintiff argues, in support of his retaliation claim, that the evidence established that Defendants were biased against white officers in favor of black officers, and that Mayor Wells-Armstrong, Deputy Chief Hunt, and Austin "made discriminatory statements towards whites and admit blacks have been discriminated against in the department." To the extent Plaintiff is rehashing arguments already raised at summary judgment, this is inappropriate for a motion to reconsider. See *Pruitt*, 2021 WL 197399, at *1.

Further, Plaintiff still has not specifically identified what *protected activity* he was engaged in, for which Defendants retaliated against him. As the court explained in its Order at page 42:

> In order to satisfy the first prong, Plaintiff must demonstrate that he engaged in activity protected by Title VII, such as reporting an action by his employer that violated Title VII. However, § 2000e–3(a) "does not protect employees for opposing *all* adverse actions by their employers but rather only for opposing *certain* practices that have been 'made an unlawful employment practice' by federal law." *Gomez v. Federal Express, Inc.*, 72 F.Supp.3d 902, 908 (N.D. Ill. 2014) (emphasis in original). "These practices encompass discrimination on the basis of race, color, religion, sex, and national origin." *Gomez*, 72 F.Supp.3d at 908, citing § 2000e–2. To establish a retaliation claim, employees must show that they actually communicated to their employer a belief that the employer has engaged in

6

> status-based discrimination, *i.e.* they must actually take a stand against the employer's discriminatory practices. *Gomez*, 72 F.Supp.3d at 908, citing *Crawford v. Metro. Government of Nashville & Davidson County, Tenn.*, 555 U.S. 271, 276–77 (2009).

Order (#35), at p. 42.

Plaintiff seems to be implying in his Motion to Reconsider that he was criticizing discrimination against white officers by Defendants in his February 2018 Facebook posts. Plaintiff, however, did not make any specific arguments in that regard at pages 49 to 50 of his Response to the summary judgment motion. Indeed, the sum total of Plaintiff's argument was: (1) his posts were deemed critical of City administration; (2) his posts alleged criminal corruption with the Auto Lab deal via non-competitive bidding and preferential treatment; (3) the investigation which led to his termination involved discussion of his Facebook posts critical of the administration; and (4) the administration believed his posts were negative towards "African-Americans and the administration."

As stated above, none of the cited facts argued by Plaintiff involved protected activity under Title VII, i.e. opposing practices encompassing discrimination based on race, color, religion, sex, or national origin. See *Gomez*, 72 F.Supp.3d at 908. The arguments raised by Plaintiff concern complaints about general corruption. The argument about the administration believing his posts were "negative" towards black people and the administration does not indicate he was complaining about racial discrimination and engaging in protected activity, but rather, at best, is a perfunctory, undeveloped, unclear sentence that Plaintiff was required to develop further to survive summary judgment. It was not the court's responsibility to make this argument for Plaintiff, but rather Plaintiff's responsibility. See *Tyler*, 70 F.3d at 466. Again, to the

7

extent Plaintiff is rehashing arguments made in his Response, or raising new arguments that were not made, but could have been made (whether because Plaintiff simply failed to make them or failed to develop them in any meaningful way), in his Response, this is inappropriate for a motion to reconsider. See *Pruitt*, 2021 WL 197399, at *1; *Stueve Construction*, 2021 WL 3032665, at *1.

*First Amendment*

Plaintiff next rehashes many of the same arguments made, and rejected by the court in its Order (#35), in support of his claim for First Amendment retaliation. Such arguments are inappropriate for a motion to reconsider. See *Pruitt*, 2021 WL 197399, at *1.

Plaintiff argues that Defendants waived any argument that his speech was not protected. The court addressed and rejected this argument in its Order (#35) in footnote 6 at page 47. Plaintiff does not address the court's footnote.

Plaintiff also rehashes his argument that the U.S. Supreme Court's recent decision in *Mahanoy Area School District v. B.L. by and through Levy*, 141 S.Ct. 2038 (2021), is applicable to his First Amendment retaliation claim. For the reasons expressed in the court's Order at pages 45 and 46, and because Plaintiff cites no new intervening case law demonstrating that *Mahanoy* applies to claims such as his, Plaintiff's motion is denied on this ground.

Plaintiff then, at pages 21 through 23 of his reconsideration motion, cites various cases in support of his argument that his speech at issue was on a matter of public concern. However, none of these cases were cited by Plaintiff in his Response, let alone discussed and applied to the facts of the case to show why Plaintiff's speech was on a

8

matter of public concern. At page 51 of his Response, Plaintiff devoted two sentences, unsupported by any case law, to his argument that his February 2018 Facebook posts were a matter of public concern. There is no reason Plaintiff could not have cited the cases that he now cites cited in his Motion to Reconsider in his original Response, as all the cases predate 2020. Reconsideration is inappropriate where a party seeks to raise arguments that could have been raised in the original briefing. *Stueve Construction*, 2021 WL 3032665, at *1.

Further, even if the court were to find that Plaintiff's speech touched on a matter of public concern, "the court must then apply the *Pickering* balancing test to determine whether 'the interests of the [plaintiff] as a citizen in commenting upon the matters of public concern' are outweighed by 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Coady v. Steil*, 187 F.3d 727, 731 (7th Cir. 1999), quoting *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563, 568 (1968). Plaintiff, in his reconsideration motion, focuses on how his newly-cited case law found the speech at issue to be a matter of public concern, but he does not discuss, in any real detail, how the *Pickering* balancing factors would apply to his speech. However, Plaintiff spent most of his Response at summary judgment on this issue arguing why the Supreme Court's decision in *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) ("*NTEU*") should apply to the *Pickering* analysis instead of *Connick v. Myers*, 461 U.S. 138 (1983), an argument he does not revisit in his reconsideration motion. In his Response at pages 51 to 52, Plaintiff gave only brief, perfunctory analysis of the *Pickering* factors.

9

    The court found:

    Once again, Plaintiff offered little if any substantive response to Defendants' argument. At page 52 of Plaintiff's Response, Plaintiff spends most of his space arguing a general legal argument about why *NTEU* should apply to the *Pickering* analysis instead of *Connick*. Then, in the paragraph below that, Plaintiff, in response to the second *Pickering* factor, states: "Defendants' improper and criminal acts undermined any confidence in the Kankakee police department." Then, in addressing the third *Pickering* factor, Plaintiff states that Defendants' argument "speaks to a code of silence. Are the defendants making the argument that reporting corrupt and illegal behavior somehow should be prohibited? Their argument is absurd." That is the sum total of Plaintiff's response to Defendants' argument on the *Connick-Pickering* balancing test.

Order (#35), at pp. 58-59.

    The court rejected Plaintiff's perfunctory and undeveloped argument with regard to the *Pickering* factors, noting that while Defendants had "provided well-taken, detailed argument in support of why each of the *Connick-Pickering* factors weigh[ed] in their favor[,]" Plaintiff had "failed to engage with and respond to Defendants' argument in a substantive way, and ha[d] addressed only two out of the seven factors at issue, and even then only in the briefest and most conclusory of manners" by not bothering to weigh all of the factors. Order (#35), at p. 59. Finding it was not the court's job to make Plaintiff's arguments for him, see *Tyler*, 70 F.3d at 466, the court found the *Connick-Pickering* balancing test favored Defendants, Plaintiff could not show his speech was protected under the First Amendment, and summary judgment must be granted in Defendants' favor on Count III. Order (#35), at p. 59. For those same reasons, Plaintiff's Motion to Reconsider is denied on this ground, as Plaintiff has again failed to develop any sort of argument as to why the *Pickering* factors balance in his favor.

Plaintiff also argues that the Fire and Police Commission did not act as the final decisionmaker in terminating Plaintiff. Plaintiff rehashes the same arguments in this regard which were rejected by the court in its Order (#35) at pages 61-64, and which are inappropriate for a motion to reconsider. See *Pruitt*, 2021 WL 197399, at *1. Plaintiff also points to the court's statement that the Commission voted to terminate him after a hearing, arguing that there was no hearing. How the Commission meeting and executive session is characterized is ultimately irrelevant to the court's determination on this issue, because Plaintiff still has presented no evidence that the Commission either delegated final policymaking authority to Dumas or ratified Dumas' actions, for all the reasons stated in the court's Order (#35) at pages 62-64. Further, as stated in the Order at page 64, any retaliatory motive Hunt may have had is irrelevant because there is no competent evidence that a retaliatory motive on Hunt's part had anything to do with Dumas' recommendation to the Commission and/or the Commission's decision to terminate Plaintiff. Also, even if Plaintiff could show that Dumas was the final policymaker with regard to Plaintiff's termination, Plaintiff did not demonstrate that Dumas acted with a retaliatory motive, as discussed at pages 65-66 of the Order (#35).

*Due Process*

Plaintiff raises several arguments in his request for the court to reconsider its ruling on his due process claims. First, Plaintiff argues that the Illinois Administrative Review Act did not apply to his termination because there was no written administrative agency decision to review. The court did not base its decision on the Administrative Review Act, noting that no party raised or argued that issue, and only noted its possible application in a footnote as an alternative basis to address Plaintiff's due process claim.

11

Plaintiff also argues that his case is analogous to *Bradley v. Village of University Park, Illinois*, 929 F.3d 875 (7th Cir. 2019). Plaintiff argues that, as in *Bradley*, he was summarily fired, without notice or an opportunity to be heard before or even after he was fired. However, unlike in *Bradley*, the court in this case has found that Plaintiff was provided some predeprivation process (see Order (#35) at pp. 69-70), and the court found that Plaintiff, through the grievance and arbitration process, was provided adequate postdeprivation process (see Order (#35) at pp. 70-72). In *Bradley*, which was decided at the pleadings stage, the plaintiff "was summarily fired, without notice or an opportunity to be heard before he was fired (or even after he was fired)[,]" and "[t]he [municipality] [did] *not dispute these points*." *Bradley*, 929 F.3d at 899 (emphasis added). Here, by contrast, Defendants vigorously disputed that Plaintiff was summarily fired without sufficient process, and the court found Plaintiff was provided the process that was due.

Plaintiff also argues that he *did* dispute Defendants' assertion that his grievance over his termination remains open and pending. Plaintiff cites his response disputing Defendants' material fact #79, which stated: "[t]he grievance and request for binding arbitration remain pending. Burke Dep. p. 25, attached as Ex. W." However, a quick perusal of Defendants' Summary Judgment Motion (#22) at page 14, indicates that this fact (numbered 80 in Defendants' motion (#22), misnumbered 79 in Plaintiff's Response (#27)), relates to Plaintiff's grievance challenging his 5-day suspension over his February 2018 Facebook posts, *not* his termination of employment by the Commission and subsequent grievance filed in June 2018. For that grievance, Defendant stated, at material fact #122, "[t]he grievance challenging Plaintiff's termination remains open. Carlson Dep. pp. 35-36, attached at Ex. HH." Plaintiff *never responded to that fact in his*

12

*Response*, and thus it was deemed admitted by the court pursuant to Central District of Illinois Local Rule 7.1(D)(2)(b)(6) and *McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 787 (7th Cir. 2019), and was noted by the court in its Order (#35) at footnote 3 on page 23.

Further, to the extent Plaintiff now wants to claim that Defendants waived the pending grievance and arbitration argument because they did not raise it as an affirmative defense, Plaintiff did not raise this argument in his Response at the summary judgment stage even though it could easily have been raised then, and thus it is not appropriate for a motion to reconsider. See *Stueve Construction*, 2021 WL 3032665, at *1.

In any event, Plaintiff has cited no authority for his position that a pending grievance and arbitration argument is only available as an affirmative defense and must be raised as such. A collective bargaining agreement with extensive grievance and arbitration procedures can (and typically does) satisfy the requirements of postdeprivation due process. *Calderone v. City of Chicago*, 979 F.3d 1156, 1166 (7th Cir. 2020). A true affirmative defense raises matters outside the scope of a plaintiff's prima facie case. *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 803 (N.D. Ill. 2000). The court agrees with Defendants that Plaintiff was aware of his collective bargaining agreement and should have been aware of the consequences of that agreement on his due process claim. Plaintiff's motion is denied on this ground.

*Conclusion*

In sum, the court stands on the analysis and reasoning employed in its Order (#35) granting Defendants summary judgment in full. The court's Order was based on the argument and facts as presented by the parties in their briefs. Of particular

relevance to the instant motion, the court addressed and analyzed Plaintiff's arguments and facts as presented and formulated by Plaintiff in the body of his Response. If Plaintiff omitted certain facts or arguments, whether consciously or through oversight, it was not the responsibility of the court to make those arguments on the facts for Plaintiff. Nor was it the responsibility of the court to develop Plaintiff's perfunctory, conclusory, or incomplete arguments into arguments that would be sufficient to survive summary judgment. Finally, many of the arguments raised are arguments already considered and rejected by the court, or ones that could have been raised by Plaintiff at summary judgment, but were not. Plaintiff's motion must be denied.

IT IS THEREFORE ORDERED:

Plaintiff's Motion to Reconsider (#42) is DENIED.

ENTERED this 29th day of November, 2021.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE